**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

HEATHER BUCK and JOSE
GUADELUPE ARIA-MARAVILLA

     Plaintiffs,

        v.

DORTHY STANKOVIC, Register of
Wills for Luzerne County, (in her
individual and official capacities),

     Defendant.

CIVIL ACTION No. 3:07-CV-0717

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Petition for Attorneys' Fees and Costs of Plaintiffs Heather Buck and Jose Guadelupe Aria-Maravilla (Doc. 45).  For the reasons set forth below, Plaintiffs' petition will be granted to the extent described in ths Memorandum.

## BACKGROUND

In this case, counsel for Plaintiffs represented them at a preliminary injunction hearing regarding the refusal of Defendant Dorothy Stankovic, Register of Wills for Luzerne County, to issue Plaintiffs a marriage license on the grounds that Mr. Arias-Maravilla could not prove his lawful presence in the United States.  (Pl.s' Pet., Doc. 45 ¶1; Def.'s Response, Doc. 48 ¶1.)  On May 1, 2007, this Court concluded that Plaintiffs demonstrated a reasonable probability of success on the merits of their argument that Defendant's policy violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment; that "Plaintiffs will suffer irreparable harm if preliminary relief is not granted;" that "the balance of the hardships tilts in favor of Plaintiffs;" and that

"issuance of a preliminary injunction would serve the public interest."  (Mem. & Order, May 1, 2007, Doc. 24, at 15-17.)  As such, the Court issued a preliminary injunction enjoining Defendant and her agents "from requiring that Plaintiff Jose Guadelupe Arias-Maravilla produce a visa or other proof of his lawful presence in the United States as a condition of obtaining a marriage license."  (*Id.* at 18.)

Following that decision, the parties negotiated a Consent Order, which this Court entered on February 11, 2008.  (Consent Order, Feb. 11, 2008, Doc. 42.)  Noting the Court's findings and Defendant's compliance with the preliminary injunction, the Order provided (1) that Defendant Stankovic and her agents, employees, and successors in office "shall not require any applicant, as a condition of obtaining a marriage license, to produce a visa or other proof of lawful presence in the United States," (2) that the Order did not prohibit any person from offering, or Defendant from relying upon, such documentation, (3) that Defendant "shall publicize or post this policy in the same manner in which Defendant has publicized or posted her prior policy regarding identification for foreign nationals seeking marriage licenses," and (4) that "Defendant shall pay Plaintiffs damages in the amount of $10,000."  (*Id.* at 1-2.)  The Order also provided a forty-five (45) day time period for filing any application for attorneys fees and costs.  (*Id.* at 2-3.)

Plaintiffs timely filed the present Petition, in which they request attorneys' fees in the amount of one hundred twenty-four thousand, five hundred seventy-nine dollars ($124,579) and costs in the amount of one thousand, eight hundred fifteen dollars and fifty-nine cents ($1815.59).  (Pls.' Pet., Doc. 45 ¶ 12.)  This motion is fully briefed and ripe for disposition.

2

## DISCUSSION

### I.      Appropriateness of Awarding Attorneys' Fees and Costs

In actions brought pursuant to 42 U.S.C. § 1983, district courts, in their discretion, "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "The touchstone of the prevailing party inquiry" is "the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 127 S. Ct. 2188, 2194 (2007). A plaintiff is a prevailing party for attorney's fees purposes if she succeeds "on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). The Third Circuit Court of Appeals recently held that plaintiffs were prevailing parties for purposes of Section 1988 where:

> (1) the trial court, based upon a finding of a likelihood of plaintiffs' success on the merits, entered a judicially enforceable order granting plaintiffs virtually all the relief they sought, . . .; (2) the defendant, after opposing interim relief, chose not to appeal from that order and remained subject to its restrictions for a period of over two years; and (3) the defendant ultimately avoided final resolution of the merits of plaintiffs' case by enacting new legislation giving plaintiffs virtually all of the relief sought in the complaint.

*People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008). As the preliminary injunction in Plaintiff's case was never "reversed, dissolved, or otherwise undone by the final decision in the same case," *Sole*, 127 S. Ct. at 2195, Plaintiffs' position is comparable to that of the plaintiffs in *People Against Police Violence*. Furthermore, a party that achieves the relief it sought is a prevailing party even if that relief was obtained through a consent decree. *Maher v. Gagne*, 448 U.S. 122, 129-30 (1980). As Plaintiffs achieved substantial relief in this litigation, and as the preliminary

3

injunction placed "a judicial imprimatur on plaintiffs' entitlement to substantially all the relief they sought," like in *People Against Police Violence*, Plaintiffs are prevailing parties within the meaning of Section 1988 and are entitled to a reasonable attorney's fee.

The initial estimate of the appropriate fee "is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson*, 465 U.S. 886, 888 (1984).  This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee, but may require subsequent adjustment. *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008). Additionally, the Supreme Court has identified twelve (12) factors that should inform courts' determination of the amount of a reasonable fee.  Those are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).


## II.      Hourly Rates

_____In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community.  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).  The Court should consider the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services

4

by lawyers of reasonably comparable skill, experience, and reputation.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable.  *Id.*  However, where "the plaintiff has met his prima facie burden under the community market rate lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward."  *Ridley v. Costco Wholesale Corp.*, 217 Fed. App'x 130, 139 (3d Cir. 2007) (quoting *Washington v. Phila. County Ct. Com. Pl.*, 89 F.3d 1031, 1036 (3d Cir. 1996)).

## A.    Relevant Legal Community

Plaintiffs argue that although this case was litigated in Scranton, Pennsylvania, the relevant community for determining a prevailing market rate is Philadelphia.  (Pls.' Pet., Doc. 45 ¶ 45.)  Generally, attorney's fees should be based on the rates prevailing in the judicial district that is the forum of litigation.  *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 426 F.3d 694, 705 (3d Cir. 2005).  There are, however, two (2) exceptions to this "forum rate" rule: (1) "[w]here local counsel are unwilling to handle a case" and (2) "where a case requires the 'special expertise of counsel from a distant district.'"  *Id.*  In these situations, "the 'relevant community' for determining a prevailing market rate is the forum in which the attorneys regularly practice, not the forum of the litigation."  *Id.*

In *Interfaith*, the district of New Jersey was the forum of litigation, and the Third Circuit Court of Appeals held that the plaintiff had not established one of the two (2) exceptions to the forum rate rule: need for special expertise from a distant district.  *Id.* at 706.  "The record [was] devoid of any evidence that [plaintiff] conducted a significant

5

search for counsel with the ability to handle this case," and only showed that plaintiff "contacted a very small number of attorneys as part of its efforts to retain counsel in a cognate case." 426 F.3d at 705. "Given that there are hundreds of firms in northern New Jersey [the forum district] that identify themselves as practicing environmental law, we do not think that such a search is adequate to justify concluding that [plaintiff] needed to turn to [the out-of-forum attorney] because no attorney in the region had the necessary expertise. . . . Indeed, we would have great difficulty in accepting that no attorney in northern New Jersey possessed the ability – as opposed to the willingness – to handle a case such as this." *Id.* at 706.

On the other hand, the Third Circuit Court of Appeals in *Interfaith* concluded that the district court did not err in finding the plaintiff met the second exception to the forum rate rule, local counsel's unwillingness to handle a case. *Id.* at 706. In making that determination, the district court had relied on the affidavit of Joseph Morris, the lead organizer for plaintiff Interfaith, wherein he recounted his unsuccessful efforts to find local counsel willing to represent plaintiff in a cognate case. *Id.* at 705-06. The affidavit stated that Morris had been turned down by at least five (5) attorneys in New Jersey and New York in that separate case and that his "general impressions" of the attorneys' reasons were the degree of political risk (as the governor of New Jersey would be a named defendant), too much intensive factual work, too unfamiliar legal terrain, and fear of absorbing the costs of the case. *Id.* at 706.

In affirming the district court's finding on unwillingness, though, the Court of Appeals stated that "what persuades us," was another affidavit, of Edward Lloyd, local

counsel for plaintiff and the director of the Environmental Law Clinic at Rutgers School of

Law.  *Id.* at 707.  This affidavit persuaded the Court of Appeals "insofar as it states that

no attorney in northern New Jersey would have been willing to handle *this* case without

an immediate advance of out of pocket costs which, in this case, foreseeably amounted

to over one million dollars.  In this respect, the Terris firm is a 'rare bird.'"  *Id.* (emphasis

added).  That second affidavit also stated that at the time suit was initiated, Lloyd was not

aware of any attorneys or firms in New Jersey with experience in plaintiffs-side

environmental litigation; that although some solo practitioners had such experience, none

were in position to handle litigation of such magnitude; and that in twenty-nine years of

experience, only his clinic and the out-of-forum firm plaintiff chose had brought citizen suit

cases in federal court on behalf of citizens without contemporaneous payment of fees

and expenses.  *Id.*

In the instant case, Plaintiffs support their need for out-of-forum counsel by

arguing that this case "involved complex constitutional issues interwoven with federal

immigration law;"  "raised issues of first impression," and was "filed and litigated under

extreme time pressure."  (Pls.' Pet., Doc. 45 ¶ 47.)  The litigation was time sensitive

because of the set date, May 12, 2007, by which Plaintiff Aria-Maravilla had to leave the

United States.  (*See* Grogan Decl., Ex. 3 to Doc. 45.)  Plaintiffs also cite the experience

that some of their attorneys had gained in a recent case, *Lozano v. City of Hazleton*, 496

F. Supp. 2d 477 (M.D. Pa. 2007), which likewise concerned the intersection of

constitutional issues and immigration law.  (Pls.' Pet., Doc. 45 ¶¶ 46-52; Walczak Decl.,

Ex. 2 to Doc. 45.)  In litigating *Lozano*, the American Civil Liberties Union ("ACLU") came

7

to find that "the intense research and writing required to develop the claims and case theories required more time and expertise than the Scranton-area practitioners could provide." (Pls.' Pet., Doc. 45 ¶ 54.)  This knowledge gained in *Lozano* informed the choice to employ non-forum counsel in this case.  (*See* Walczak Decl., Ex. 2 to Doc. 45 ¶ 12.)  According to one of Plaintiffs' attorneys, Legal Director for the ACLU of Pennsylvania Witold Walczak,

> [e]xcellent civil rights lawyers practice in the Middle District, [Barry H.] Dyller and [George R.] Barron being two of them.  But the issues in the *Lozano* case – like this one – were novel and the relevant law esoteric, particularly the application of the Supremacy Clause and the highly specialized morass that is federal-immigration law.  Prosecuting the case required attorneys with diverse expertise, including litigators experienced with complex trial practice before federal courts, civil rights practitioners, immigration-, constitutional- and municipal-law experts.  I was unable to identify any lawyers in the Scranton area with expertise in Supremacy Clause litigation and the intersection of immigration and constitutional law.

(*Id.* ¶ 10.)  Attorney Walczak describes the expertise that out-of-forum attorneys, such as Omar Jadwat, Jennifer Chang, and Seth Kreimer, provided in this case and notes that on the recommendations of Kreimer and co-lead counsel Mary Catherine Roper, the team retained Attorneys John Grogan and Edward Diver, partners at "a small, highly specialized litigation firm in Philadelphia," not only because Plaintiffs needed attorneys with Grogan and Diver's expertise in constitutional litigation, but also because Plaintiffs needed experienced attorneys "who could immediately commit themselves to an intensive effort" and who were willing "to devote themselves to this case to the exclusion of virtually all other work through the preliminary injunction proceedings."  (*Id.* ¶ 12.)  Mr. Walczak, who states that he is familiar with many constitutional and immigration lawyers in Northeastern Pennsylvania, states "[i]t would simply not have been possible for [these

8

local attorneys] to devote the time and effort or to bring together the many types of

expertise needed, particularly under the tight deadlines of a case seeking preliminary

injunctive relief."  (*Id.* ¶ 15.)

Finally, in addition to expertise and time constraints, Attorney Walczak notes a

third factor necessitating out-of-forum counsel: unpopularity of clients.  "[F]rom the

*Lozano* case I learned how difficult it is to find lawyers willing to work on a high-profile

case involving undocumented immigrants – which one of our clients was admitted to be. .

. . In the *Lozano* litigation, several established firms declined to work on the case

because of the controversial nature of the issues before we made contact with [the

Philadelphia firm with which Walczak worked on *Lozano*]."  Plaintiffs also note that the

Defendant in this case retained a Philadelphia law firm to represent her.  (*Id.* ¶ 51.)

With regard to the first exception, Plaintiffs have not provided more evidence of

local counsel's inability to handle this case than the evidence – upon which it was clear

error for the district court to base its finding – that plaintiffs provided in *Interfaith*.  As

such, Plaintiffs have not satisfied the first exception to the forum rate rule.

Regarding the second exception, Plaintiffs relate their experience in the *Lozano*

litigation to explain the factual situation regarding the availability of local counsel that they

faced at the outset of this case; however, they do not provide evidence that any firms

actually refused to work on the instant case.  Attorney Walczak did state that it would not

have been possible for local attorneys to devote their energies to this case to the

exclusion of virtually all other work – as necessitated by the tight deadlines imposed by

Mr. Aria-Maravilla's imminent departure.  While not insensitive to the tight deadlines in

this case, the Court finds this aspect of Walczak's affidavit less convincing of local

counsel's unwillingness than was the affidavit which convinced the Third Circuit Court of Appeals in *Interfaith*.   That affidavit, filed by a local attorney, stated that in twenty-nine (29) years of practicing environmental law in the forum district, the attorney knew of only two (2) firms which had brought citizen suit cases in federal courts without contemporaneous payment of fees and expenses, which in *Interfaith* could have been over one million dollars ($1,000,000).   *See* 426 F.3d at 707.   This led the Court of Appeals to conclude that the non-local firm which did undertake the case was "a 'rare bird.'" *Id.*   Here, Plaintiffs have produced no such evidence; that is, no evidence that it is rare for plaintiffs attorneys in this district to undertake civil rights cases with strict deadlines knowing that they will only be paid, if at all, under a fee shifting statute.

Furthermore, Plaintiffs' arguments based on the controversial nature of *Lozano* causing "several established firms" in the Middle District of Pennsylvania to decline to work on *that* case do not necessarily apply to the case at hand.   Although both cases involved undocumented immigrants and proof of citizenship requirements, the issues in *Lozano* arguably impacted more people, as the plaintiffs were more numerous, the defendant a municipality rather than an individual official, and the challenged policy an enacted ordinance rather than the less formal policy of one office.   And it has not been established that the same level of controversy or unpopularity of clients would attend a case involving the employment and housing rights of a group of undocumented immigrants in a city whose population had recently "increased sharply" because of "a recent influx of immigrants," *see Lozano*, 496 F. Supp. 2d at 484, as would attend a case involving the right of two people to marry before one Plaintiff's voluntary departure from

10

the United States.

In light of the foregoing, Plaintiffs have not satisfied the second exception to the forum rate rule.  Therefore, attorneys' fees will be determined based on prevailing market rates in this district.

**B.      Reasonableness of Rates**

Plaintiffs request the following hourly rates for their counsel:

(1) For Ms. Roper, co-lead counsel in this case, Plaintiffs request an hourly rate of three hundred fifty dollars ($350).  (Doc. 45 ¶ 58.)  Roper, of the ACLU of Pennsylvania, has practiced law since 1994 after completing a federal judicial clerkship.  Her experience includes non-profit and private sector work, including three (3) years as a partner at the firm Drinker Biddle & Reath, LLP, in Philadelphia.  (Roper Decl., Ex. 5 to Doc. 45.)  In accordance with ACLU practice, she does not charge clients, but "[i]n all fee petitions and settlement negotiations" she bills her time "at $350 per hour."  (*Id.*)

(2) For Mr. Grogan, co-lead counsel along with Attorney Roper, Plaintiffs request a rate of three hundred fifty dollars ($350), which Mr. Grogan indicates was his regular billing rate at the time he initiated this case.  (Pls.' Pet., Doc. 45 ¶ 58.)  Mr. Grogan, a partner at the firm Langer, Grogan, and Diver, P.C., with a regular practice in complex civil litigation and experience in litigation involving immigrants and civil rights, has been practicing since 1994.  He has served as a law clerk in the Supreme Court of New Jersey, co-founded and directed a non-profit law firm, taught law, and worked in the private sector.  (Grogan Decl., Ex. 3 to Doc. 45.)

11

(3) For Mr. Diver, also a partner at Langer, Grogan, and Diver, P.C., who graduated law school in 1999 and joined the firm in 2005 following federal district and appellate court clerkships and work in academia, Plaintiffs request a rate of three hundred dollars ($300), which Diver states was his normal billing rate at the time of the case.  (Pls.' Pet., Doc. 45 ¶ 58, Diver Decl., Ex. 4 to Doc. 45.)

(4) For Mr. Jadwat, of the ACLU Foundation Immigrants' Rights Project ("ACLU IRP") based in New York, Plaintiffs request a rate of three hundred dollars ($300).  (Pls.' Pet., Doc. 45 ¶ 58.)  Attorney Jadwat has practiced law, including complex federal cases, with the ACLU IRP since 2002, after a one-year federal judicial clerkship.  (Jadwat Decl., Ex. 6 to Doc. 45.)  As an ACLU attorney, he does not charge clients, but indicates that the market rate for attorneys of his skill and experience in New York City is at least four hundred seventy-five dollars ($475) and that he is requesting the lower rate of three hundred dollars ($300) to avoid disputes in this Fee Petition.  (*Id.*)

(5) For Ms. Chang, of the ACLU IRP in San Francisco, Plaintiffs request a rate of two hundred sixty dollars ($260).  (Pls.' Pet., Doc. 45 ¶ 58.)  Attorney Chang has practiced law, including complex federal cases, at the ACLU IRP since 2004, following a clerkship for a federal appellate judge.  (Chang Dep., Ex. 7 to Doc. 45.)  Attorney Chang indicates she has particular expertise in the rights of non-citizens under federal immigration statutes and regulations and under the constitution, as well as in the area of discrimination law.  (*Id.*)  While she does not charge her clients, she indicates that the market rate for attorneys of her skill and experience in San Francisco is at least three hundred twenty dollars ($320) per hour and that she is requesting the lower rate of two-hundred sixty dollars ($260) in the interest of avoiding disputes in this Fee Petition.  (*Id.*)

(6) For Mr. Kreimer, a professor at the University of Pennsylvania Law School who has "taught, consulted and practiced in the fields of constitutional law and civil rights litigation for over 25 years," Plaintiffs request an hourly rate of three hundred eighty-five dollars ($385), which Attorney Kreimer indicates was his regular billing rate at the time he participated in the case.  (Pls.' Pet., Doc. 45 ¶ 58, Kreimer Decl., Ex. 8 to Doc. 45.)

Finally, Plaintiffs indicate that Attorney Walczak provided consultation but that they are not seeking compensation for his time.  (Grogan Decl.,  Ex. 3 to Doc. 45.)  In support of these rates, Plaintiffs submitted the attorneys' own declarations and curricula vitae, as well as the declarations of other attorneys.

### 1.    Plaintiff's Prima Facie Evidence

"The party seeking fees bears the burden of establishing by way of satisfactory evidence, *in addition to the attorney's own affidavits* . . . that the requested hourly rates meet this standard."  *Interfaith*, 426 F.3d 708 (internal quotation marks omitted) (emphasis added).  To begin, Plaintiffs have not met this burden with respect to Attorneys Jadwat and Chang, but have done so with respect to the other attorneys: First, they submit the declaration of Edward M. Posner, a partner at the firm Drinker Biddle & Reath, LLP, in Philadelphia, who is involved in setting hourly rates and reviewing billings at his firm.  He indicates he worked with Attorney Roper during her nine (9) years at his firm and that he knows of Attorneys Grogan and Diver by reputation.  (Posner Decl., Ex. 9 to Doc. 45.)  Mr. Posner's declaration focused on the reasonableness of rates based on the Philadelphia-area market, but he did indicate that Roper's requested rate of three hundred fifty dollars ($350) per hour "is low, by comparison to rates regularly charged for

13

attorneys with similar experience and expertise," and that the rates for Attorney Grogan, who has been practicing as long as Ms. Roper, and for Attorney Diver, appear reasonable based on the Philadelphia market.  (*Id.*)  Plaintiffs have also submitted the Declaration of Francis Patrick Newell, a partner at the Philadelphia firm Harkins Cunningham, who states that upon review of the curricula vitae of Attorneys Roper, Grogan and Diver, the rates they seek "appear lower than rates charged by many comparable Philadelphia-based counsel."  (Newell Decl., Ex. 10 to Doc. 45.)

In support of the reasonableness of their requested rates in the forum district, Plaintiffs submit the declaration of Thomas B. Schmidt, III, who is of counsel at Pepper Hammilton, LLP, and managing attorney of the firm's Harrisburg, Pennsylvania, office. (Schmidt Decl., Ex. 1 to Doc. 51.)  Mr. Schmidt indicates that he has participated in setting hourly rates for attorneys practicing in his office and that in his experience, "the major Harrisburg firms set their rates at about 80% of the rates that comparable firms charge in Philadelphia."  (*Id.*)

### Prima Facie Evidence of Reasonable Rates for Attorneys Roper and Grogan

Mr. Schmidt further states that attorneys at his firm's Philadelphia office with experience and seniority comparable to Roper and Grogan charge from four hundred twenty to four hundred ninety-five dollars ($420 - $495) per hour; and as noted above, Roper and Grogan themselves regularly billed three hundred fifty dollars ($350) per hour in the Philadelphia area market at the time of this litigation.  The range of Philadelphia-area rates for Attorneys Roper and Grogan that is supported by the evidence is thus three hundred fifty to four hundred ninety five dollars ($350 - $495).  When discounted by twenty percent (20%) in accordance with Mr. Schmidt's observations, this range yields a

local rate of two hundred eighty to three hundred ninety-six dollars ($280 - $396), with a mid-point at three hundred thirty-eight dollars ($338).

<u>Prima Facie Evidence of Reasonable Rate for Attorney Diver</u>

Mr. Schmidt stated as well that attorneys in his firm's Philadelphia office with nine (9) years of experience and seniority comparable to that of Attorney Diver charge from three hundred eighty to four hundred twenty-five dollars ($380 - $425) per hour; and as noted above, Attorney Diver regularly billed three hundred dollars ($300) per hour in Philadelphia at the time of this litigation.  The range of Philadelphia-area rates for Attorney Diver that is supported by the evidence is thus three hundred dollars to four hundred twenty-five dollars ($300 - $425).  When discounted by twenty percent (20%) in accordance with Mr. Schmidt's observations, this range yields a local rate of two hundred forty to three hundred forty dollars ($240 - $340), with a mid-point at two hundred ninety dollars ($290).

<u>Prima Facie Evidence of Reasonable Rate for Attorney Kreimer</u>

Mr. Schmidt also stated that "[a] Pepper Hamilton partner at the Harrisburg office with seniority comparable to Professor Kreimer's bills at $415/hour."  (Schmidt Decl., Ex. 1 to Doc. 51.)  And as noted above, Professor Kreimer's regular billing rate, in Philadelphia, at the time of this litigation was three hundred eighty-five dollars ($385) per hour; when discounted by twenty percent (20%) in accordance with Mr. Schmidt's observations, this figure yields a local rate of three hundred and eight dollars ($308).  The range of local rates for Attorney Kreimer that is supported by the evidence is thus three hundred eight to four hundred fifteen dollars ($308 - $415), with a mid-point at three hundred sixty-one dollars and fifty cents ($361.50).

15

## 2.      Defendant's Rebuttal Evidence of Reasonable Rates

The foregoing submissions satisfy Plaintiffs' prima facie burden of demonstrating reasonable hourly rates for Attorneys Roper, Grogan, Diver, and Kreimer.  Defendant, in response, has submitted contradictory evidence of reasonable rates in the Middle District of Pennsylvania.  Defendant cites the declaration of Samuel J. Pace, Jr., a partner at the firm of Dugan, Brinkmann, Maginnis and Pace in Philadelphia, who indicates he has spent his career at three (3) law firms in Philadelphia, that over the last twenty-five (25) years he has had sole responsibility for billing all his hourly rate clients, and that he regularly attends sessions at conventions where billing and billing guidelines are discussed.  (Pace Decl., Ex. B to Doc. 48 ¶¶ 1-3.)  Mr. Pace indicates that based on his experience and understanding, "the prevailing hourly rate for sophisticated litigation in the Middle District of Pennsylvania varies from $150.00 to $250.00 per hour." (*Id.* ¶ 12.)  His declaration also states that the Defendant's attorney Harry G. Mahoney, "an experienced litigator in the area of civil rights litigation with 30+ years of experience, billed at the rate of $210.00/hour which is in the range of rates I would expect in the Forum." (*Id.* ¶ 19.)  Mr. Pace characterizes two hundred fifty dollars ($250) per hour, while "at the high end," to be "a more reasonable hourly rate" for Attorneys Roper, Grogan, and Diver that the rates Plaintiffs requested for these attorneys, and he bases his calculations of reasonable fees for these attorneys on the rate of two hundred fifty dollars ($250).  (*Id.* ¶¶ 20-21.)  Defendant also indicates that associates at Mr. Mahoney's firm fill at a rate of one hundred sixty dollars ($160) per hour.  (Def.'s Response, Doc. 48 ¶ 49.)

### 3.     Rates to Be Awarded

For Attorneys Roper and Grogan, who earned their law degrees in 1993, the

Plaintiffs' prima facie evidence supports a local rate of three hundred thirty-eight dollars

($338), and Defendant's evidence supports a rate of two hundred fifty dollars ($250) per

hour.  The mid-point between the Plaintiffs' and Defendant's rates is thus two hundred

ninety-four dollars ($294).  Rounding slightly, the Court finds two-hundred ninety dollars

($290) to be a reasonable rate for Attorneys Roper and Grogan in this case.

For Attorney Diver, who earned his law degree in 1999, Plaintiffs' evidence

supports a local rate at two hundred ninety dollars ($290).  Turning to Defendant's

evidence of the appropriate range, Attorney Diver's rate would fall below those of the

more experienced Roper and Grogan but still closer to the high end of that range to the

low end; thus, the Court determines that Defendant's evidence points to a rate of two

hundred twenty-five dollars ($225) per hour.  The mid-point between these figures, the

first based on Plaintiffs' evidence and the second based on Defendant's evidence, is two

hundred fifty-seven dollars and fifty cents ($257.50).  Rounding slightly, the Court finds

that two hundred and sixty dollars ($260) per hour is a reasonable rate for Attorney Diver

in this case.

For Attorney Kreimer, Plaintiffs' evidence supports a local rate of three hundred

sixty-one dollars and fifty cents ($361.50).  Turning to Defendant's evidence, Attorney

Kreimer's rate would be no lower within the appropriate range than that of Attorneys

Roper and Grogan; thus, the Court determines that Defendant's evidence points to a rate

of two hundred fifty dollars ($250) per hour for Attorney Kreimer.  The mid-point between

these figures is three hundred five dollars and seventy-five cents ($305.75.)  Rounding

slightly, the Court finds that three hundred dollars ($300) per hour is a reasonable rate for Attorney Kreimer in this case.

Finally, beyond the attorneys' own affidavits, Plaintiffs have not submitted evidence of what reasonable local rates would be for Attorneys Jadwat, who earned his law degree in 2001, and Attorney Chang, who earned hers in 2003.  In light of the Defendant's evidence that one hundred sixty dollars ($160) per hour is a reasonable rate for associate-level attorneys in this district, and in light of Attorney Jadwat's relative experience in relation to Attorney Chang, the Court finds that a reasonable rate for Attorney Chang is one hundred sixty dollars ($160) per hour, and a reasonable rate for Attorney Jadwat is one hundred eighty dollars ($180) per hour.


**III.     Reasonableness of Hours Expended**

The Court must also "review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted).  The general guide for reasonableness is that "[h]ours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted).

First, Plaintiffs must submit evidence of the hours worked that is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1037

(3d Cir. 1996).  To be specific enough, a petition must be "fairly definite . . . as to the hours devoted to general activities, e.g., pretrial discovery, settlement negotiations . . . . However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted."  *Id.* at 1037-38 (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)).  Further, there is no requirement "that records be kept by task - e.g., for each motion, issue or part of the case."  *Id.* at 1038.

Once Plaintiffs have met this initial burden, "[t]he party opposing the fee award then has the burden to challenge the reasonableness of the requested fee, by affidavit or brief with sufficient specificity to give the fee applicant notice of the objection."  *E.E.O.C. v. Fed. Express Corp.*, – F. Supp. 2d –, Civ. A. No. 1:02-CV-1194, 2005 WL 6073699, at *15 (M.D. Pa. Jan. 18, 2005) (Kane, J.).  "Once the adverse party raised objections to the fee request, the district court has considerable discretion to adjust the award in light of those objections."  *Id.*

To meet their burden, Plaintiffs have submitted declarations of their attorneys and individual and composite time sheets.  (*See* Pls.' Fee Request Chart, Ex. 1 to Roper Suppl. Decl., Ex. 2 to Doc. 51 [hereinafter "Fee Request Chart"]; Exs. 3-8 to Doc. 45.) These sheets indicate that between April 2, 2007 and March 27, 2008, Plaintiffs' attorneys spent a total of 425.7 hours on the case.  (Roper Suppl. Decl., Ex. 2 to Doc. 51; Composite Chart of Fees, Ex. 11 to Doc. 45.)  In the exercise of billing judgment, however, they reduced the total requested time to 376.2 hours.  (Fee Request Chart.) Defendant's specific objections are discussed below:

### A.  Attorneys Chang and Jadwat

Defendant argues that "[i]t does not appear that Ms. Chang or Mr. Jadwat made a significant contribution to the plaintiffs' cause and their time should not reasonably have been included."  (Decl. of Samuel J. Pace, Partner, Dugan, Brinkmann, Marginnis and Pace, Ex. 2 to Doc. 48 ¶ 18.)  But they make no more specific objection to the relatively small number of hours for which these attorneys request compensation, and Plaintiffs insist that these attorneys "are immigration law and policy experts . . . who provided irreplaceable consultation on specific and complex issues of immigration law."  (Pls.' Reply Br., Doc. 51 at 10.)  These attorneys will not be excluded from recovering fees.

### B.  Duplicative Legal Research

Defendant challenges as duplicative much of the initial research performed in this case, because "a number of issues involved in this case, such as federal preemption under the supremacy clause, had already been researched extensively by some of these same attorneys, i.e., Witold Walczak, Jennifer Chang and Omar Jadwat, in the *Lozano* case."  As such, "much of the research conducted . . . in preparation of the Complaint and Motion for Injunctive Relief was redundant and unnecessary."  (Def.'s Response, Doc. 48 ¶ 70.)  This duplication argument cannot apply, however, to research of issues not involved in the *Lozano* litigation, most notably, the constitutional right to marry, to which many of Plaintiffs' research hours were devoted.  The remaining research hours were spent as follows:

Mr. Diver expended six (6) hours on April 19, part of a 6.3 hour entry on April 20, and 7.7 hours on April 24 researching and preparing a memorandum on the REAL ID Act

and state identification requirements.  (Fee Request Chart.)  Mr. Grogan spent 2.2 hours

on April 20 reviewing the REAL ID Act and part of a 6.6 hour entry on April 21

researching "abstention and real id issues."  (*Id.*)  The Court cannot conclude that these

hours duplicate work done on the *Lozano* litigation.

Additionally, Mr. Kreimer spent a total of one (1) hour, spread among three (3)

days in April, researching 11th Amendment, preemption, and abstention issues, as well as

part of a 0.75 hour entry on April 12 researching irreparable injury.  (Fee Request Chart.)

Plaintiffs indicate that some of their research on preemption was based on *Lozano*

research, but they state that they "spent relatively little time translating [the *Lozano*

research] into the pleading and briefing on the preemption issue."  (Pls.' Reply Br., Doc.

51, at 14.)  Upon review of the Fee Petition, time spent on the issue of preemption

appears to be minimal, consistent with Plaintiffs' position that their counsel applied this

aspect of *Lozano* research to this case, but did not duplicate the research.

Finally, the Fee Petition also includes entries for research of a more general

nature.  Attorney Diver expended 18.2 hours researching "constitutional and immigration

issues" between April 4th and 6th; and Attorney Grogan spent part of a 4.2 hour entry on

April 22 researching "constitutional litigation."  (Fee Request Chart.)  Generally,

background research, even if not connected to a particular pleading or motion, is

compensable, although courts have reduced the amount of time recoverable for

background research of a very general nature.  *See Watcher v. Pottsville Area*

*Emergency Med. Serv., Inc.*, No. Civ. A. 3:00-CV-1123, 2008 WL 1924118, at *4 (M.D.

Pa. Apr. 28, 2008) (Caputo, J.).  For instance, in *American Lung Ass'n v. Reilly*, 144

F.R.D. 622, 627-28 (E.D.N.Y. 1992), the court allowed compensation for only ten (10) out of 22.9 hours that attorneys who "characterize[d] themselves as experts in the field of federal environmental law" spent familiarizing themselves with the Clean Air Act and the Federal Rules of Civil Procedure.

Plaintiffs have argued elsewhere in their Fee Petition that this case and the *Lozano* litigation both involved the intersection of constitutional and immigration law, (*e.g.* Pls. Pet., Doc. 45 ¶ 47), and that Attorney Diver's hourly rate is justified in part because he had "expertise in constitutional law" and "some experience with immigration law." (*Id.* ¶¶ 52, 54.)  "[T]he higher the allowed hourly rate commanded based on skill and experience, the shorter the time it should require an attorney to perform a particular task." *Rainey v. Phila. Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993).  Although the Court has reduced Attorney Diver's requested rate somewhat, it still finds his 18.2 hours of research described only as on "constitutional and immigration issues" to be excessive. Therefore, this time will be reduced by half, or 9.1 hours.

### C.    Excessive Time Preparing Complaint and Motion

Defendant challenges Plaintiffs' request for hours spent preparing the Complaint and motion as excessive, largely because this time is attributed mostly to the relatively more experienced attorneys Grogan and Diver.  (Def.'s Response, Doc. 48 ¶ 70.)  In support, Defendant submits the Declaration of Samuel Pace, opining that "[i]t is unreasonable that an experienced litigator would require 27.1 hours to draft a Complaint as Mr. Grogan did in addition to 24.6 hours of research," and that "the total of 74.5 hours spent by Messrs. Grogan and Diver in connection with preparation of the Preliminary

Injunction Motion, Brief and research is unreasonable."  (*Id.* ¶ 9.)

Mr. Pace does not specify how he derived these sums from Plaintiffs' time sheets, but upon review of the Fee Request Chart, and excluding time entries identified as devoted only to "research," which were addressed above, the Court finds that:

(1) For the Complaint, Mr. Grogan devoted 23.1 hours to preparing it[1]; Mr. Jadwat devoted two (2) hours, Ms. Chang, one (1) hour, and Mr. Kreimer, 1.25 hours to reviewing and editing it; and Ms. Roper devoted 3.4 hours to making final revisions and filing the Complaint.  (*See* Fee Request Chart.)  The total time requested for work on the Complaint is thus 30.75 hours.

(2) For the Preliminary Injunction motion and supporting brief, Mr. Diver devoted 49.6 hours to their preparation; Mr. Grogan devoted seven (7) hours[2] to their drafting and review; Mr. Jadwat devoted 2.5 hours, Ms. Chang, 2.4 hours, and Mr. Kreimer 0.25 hours to reviewing the brief; and Ms. Roper devoted five (5) hours to final revisions and filing of the motion and supporting brief.  (*See id.*)  The total time requested for work on the Preliminary Injunction motion is thus 62.75 hours.

Plaintiffs argue that these time entries are not excessive because "this case had to be won at the preliminary injunction stage or not at all."  (Pls.' Reply Br., Doc. 51, at 15.)

---

[1]   The time sheet reflects 18.5 hours on preparation of the Complaint and another entry, of 9.2 hours on April 10, 2007, in which Attorney Grogan worked on both the Complaint and the preliminary injunction.  For purposes of calculation, the Court will assume that half of this shared time, 4.6 hours, was spent on the Complaint, with another 4.6 on the preliminary injunction.

[2]   This seven (7) hours reflects a 2.4 hour entry on April 18, 2007 and half of the 9.2 hour entry on April 10, 2007 that was split between Complaint and Preliminary Injunction.

If Plaintiffs did not obtain a preliminary injunction – even if they would have later prevailed – Mr. Arias-Maravilla would not be able to return to the country to be married.  (*Id.*)  "This was not a case in which the Plaintiffs could refine their claims as the evidence surfaced and the litigation progressed – every potential claim – state or federal – and every potential defense had to be explored and nailed down before the first papers were filed on April 17, 2007."  (*Id.*)  Plaintiffs continue: "the short time afforded Plaintiffs to obtain relief or lose forever their opportunity to do so *is* relevant to the reasonableness of the time devoted by Plaintiffs' counsel during those four weeks in April 2007."  (*Id.*)

*Barrett v. West Chester Univ. of Pa. of State Sys. of Higher Educ.* concerned a challenge to the amount of time spent on a complaint and motion for preliminary injunction.  No. 03-CV-4978, 2006 WL 859714, at *8 (E.D. Pa. Mar. 31, 2006).  While the court made minor adjustments to time entries based on specific objections, it held it could not conclude that 69.9 hours to prepare the motion was unreasonable, where the hours were supported by time sheets and explanatory notes, the motion was thirty (30) pages long and included one hundred sixty-one (161) pages of exhibits.  *Id.*  In light of Plaintiff's four (4) page motion, sixteen (16) pages of supporting declarations, twenty-nine (29) page supporting brief, and more significant, in light of the "novelty . . . of the questions" and "time limitations imposed by the client or the circumstances," *see Hensley*, 461 U.S. at 430 n.3, particularly the need to win "at the preliminary injunction stage or not at all," (Pls.' Reply Br., Doc. 51, at 15), this Court cannot conclude that the 62.75 hours Plaintiffs request for work on the preliminary injunction motion are unreasonable.

Regarding the 23.1 hours Attorney Grogan spent preparing the Complaint, other courts within this district have reduced smaller amounts of time devoted to preparation of an initial complaint.  The court in *Barrett*, also a preliminary injunction case, awarded fees for only eight (8) of the eleven (11) hours spent drafting the fifteen (15) page complaint, as the complaint contained passages "strikingly similar" to those in another case.  2006 WL 859714, at *8.  In *Powell v. SEPTA*, a §§ 1981 and 1983 case alleging discriminatory and retaliatory termination, the court awarded fees for only five (5) of the eleven (11) hours the plaintiff claimed for preparing an initial complaint.  No. 05-CV-6769, 2007 WL 1795686, at *1, 4 (E.D. Pa. June 18, 2007).  Here, the Complaint is twenty-two (22) pages in length and raises three (3) counts.  (*See* Doc. 1.)  The claims raised have some novelty, but on the other hand, the 23.1 hours Attorney Grogan requests for preparing the Complaint are in addition to other time he claims for preparing the Plaintiffs' declarations (which recount the same facts set forth in the Complaint) and researching constitutional protections for marriage and the Pennsylvania state marriage requirements (which law is set forth in the Complaint).  These 23.1 hours are also in addition to hours the other attorneys claim for preparing the preliminary injunction motion and supporting brief, which address the points of law addressed in the Complaint.  As such, 23.1 hours is excessive for preparing the Complaint.  This amount of time will therefore be reduced by half, and 11.55 hours will therefore be deducted from Attorney Grogan's requested fee.

**D.    Preparation for Preliminary Injunction Hearing**

By the Court's calculation, the time entries devoted to preparation for the hearing, including all research conducted by the attorneys who attended the hearing subsequent

to filing of the preliminary injunction motion, are as follows: 12.6 hours by Attorney Roper; no more than 29.3 hours by Attorney Grogan, as his time entries that mention hearing preparation also include time spent on a trip to Hazleton and in a meeting with clients; no more than 32.6 hours by Attorney Diver, as his time entries that mention hearing preparation include travel to Hazleton; and 0.4 hours by Attorney Jadwat, in which he reviewed the Defendant's responsive papers.  (*See* Fee Request Chart.)  Plaintiffs thus seek no more than 74.9 hours for preparation for the hearing.

Defendant objects to the amount of time that Attorneys Grogan and Diver spent in preparation for the hearing.  (Def.'s Response, Doc. 48 ¶¶ 71, 78.)  She submits the statement of Samuel Pace that it was unreasonable for two attorneys to bill a total of 63.2 hours[3] in preparation for the five (5) hour hearing which included five (5) witnesses and according to Pace was "neither long, complicated nor difficult."  (*See* Pace Decl., Ex. 2 to Doc. 48 ¶¶ 9, 14.)

In *Barrett*, the plaintiffs submitted 206.5 hours spent preparing for a preliminary injunction hearing that lasted twenty-four (24) hours, over the course of four (4) days. 2006 WL 859714, at *9.  The court held that of these hours, ninety (90) expended by a seventh-year associate on "preparation for hearing" or "revising outlines" was excessive and reduced this amount by twenty-five percent (25%).  *Id.* at *10.  The court also deducted 2.5 of the 4.9 hours spent by a paralegal as excessive, and deducted 1.6 attorney hours spent preparing for a witness who never testified.  Otherwise, the court

---

[3]

The Court calculates that these attorneys are requesting only 61.9 hours, rather than 63.2, for their preparation time.

made no more deductions from the preparation time. *See id.* The court thus allowed

179.9 hours of compensable preparation time, and made its deductions based only on

specified objections. Although the hearing in this case was not as lengthy as the hearing

in *Barrett*, the Court nonetheless cannot conclude that the no-more-than 29.3 hours of

preparation time claimed by Attorney Grogan and the no-more-than 32.6 hours of

preparation time claimed by Attorney Diver are excessive.

Defendant also objects to the fact that Attorneys Grogan, Diver, and Roper each

billed time for a strategy meeting they held on April 20, 2007. (Def.'s Response, Doc. 48

¶ 25.) Although Defendants characterize these entries as "triple-billing" that is "[c]learly . .

. unreasonable," the Court finds nothing improper or unnecessary about the lead

attorneys in this case holding this one particular meeting to confer about strategy for their

upcoming hearing. *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 Fed. App'x

93, 99 (3d Cir. 2006) (finding nothing unreasonable about approximately one hundred

forty (140) hours that attorneys spent collectively on meetings and conference calls).

Neither of Defendant's objections merit reduction of hearing preparation time.

### E.    Attorney Diver's Attendance at the Hearing

The preliminary injunction hearing was attended by Attorneys Grogan, Diver,

Roper, and Jadwat. Plaintiffs do not request compensation for Attorney Jadwat's time

spent at the hearing (*see* Fee Request Chart, at 3), but do request compensation for the

other attorneys' attendance. Defendant argues that only Attorneys Grogan and Roper

actively participated at the hearing and as such, Mr. Diver should not be compensated for

his attendance. (Def.'s Response, Doc. 48 ¶ 71 n.1.) According to Plaintiffs, however,

"Mr. Diver's presence at the hearing was necessary, as he was the member of the legal team prepared to address issues relating to the sufficiency of Mr. Arias-Maravilla's passport as personal identification." (Pls.' Reply Br., Doc. 51, at 11-12.) A review of the time sheets reveals that Attorney Diver did the vast majority of research regarding federal and state identification laws. (Fee Request Chart.) He also did the vast majority of work drafting the Preliminary Injunction motion and supporting brief. (*See id.*) The Court is thus unable to conclude that his attendance at the hearing was unnecessary or an unreasonable expenditure of attorney hours.

### F.    Travel Time

Defendant objects to the Plaintiffs' request for time spent traveling to and from Luzerne County. Generally, a party that hires out-of-forum counsel may not be compensated for counsel's travel time and costs in a fee shifting statute. *Interfaith*, 426 F.3d at 710. As such, attorney travel time is not compensable here. As for identifying travel time, Defendant objects that the travel time claimed often "vastly exceeds the time spent on the actual task for which the trip was made," and that it time is often "simply lumped in with other time entries so that it is impossible to determine how much time was actually travel time." (Def.'s Response, Doc. 48 ¶ 72.) It is possible, however, to reasonably estimate how much travel time Plaintiffs request. Plaintiff's Fee Petition requests compensation for the following trips[4]:

---

[4]    Plaintiffs' Fee Request Chart also includes a 6.4 hour entry by Attorney Grogan for "[t]ravel to and conduct settlement conference" on September 27, 2007 and a five (5) hour entry for Attorney Roper to "[a]ttend settlement conference" dated September 26, 2007. (Fee Request Chart, at 4.) But the parties' submissions do not make clear where this conference was held – and thus how

(1) On April 17, 2007, 7.2 hours for Mr. Grogan's "[t]rip to Hazelton and Wilkes-Barre to make final application" for Plaintiff's marriage license.  (*Id.* at 2.)  Mr. Grogan and the Plaintiffs made their application at the Defendant's office in Wilkes-Barre. (Mem. & Order, May 1, 2007, Doc. 24, at 2.)  The Court takes note that the estimated travel time from Attorney Grogan's office at 1717 Arch Street in Philadelphia to Wilkes-Barre is exactly two (2) hours, according to the website Mapquest.  (*See* http://www.mapquest.com).  This trip represents four (4) hours of travel time.

(2) On April 23, 2007, 9.4 hours for Attorney Grogan's trip to "[m]eet w/ clients in West Hazelton."  (Fee Request Chart, at 3.)  The Court takes note that the estimated travel time from Attorney Grogan's office to West Hazelton is one (1) hour and fifty-two (52) minutes, according to the website Mapquest.  (*See* http://www.mapquest.com).  This trip represents three (3) hours and forty-four (44) minutes of travel time.

(3) On April 25, 2007, 3.7 hours by Mr. Diver for "[t]ravel to Hazelton / hearing strategy w/ Grogan," and 13.4 hours by Mr. Grogan to "[p]repare for court hearing; travel to NE Penna, meet with clients."  Plaintiffs request compensation for each of these attorneys' return trips in entries dated April 26, 2007, which cover both travel and attendance at the hearing.  Plaintiffs also request compensation for Attorney Roper's travel both to and from Scranton for the hearing as part of a larger entry for her work, dated April 26, 2007.  (Fee Request Chart, at 3.)  The Court takes note that the preliminary injunction hearing, which all three (3) attorneys attended, was held at the

---

much of this time was travel time – and Defendant has not made objections to this trip as she has to the others.  Therefore, the Court will make no reductions to these entries.

federal courthouse located at 235 North Washington Avenue, Scranton.  (*See* Order, Apr. 19, 2007, Doc. 9.)  According to the website Mapquest, it takes two (2) hours and nine (9) minutes to travel to the Scranton courthouse from these attorneys' Philadelphia offices. (*See* http://www.mapquest.com).  This trip thus represents four (4) hours and eighteen (18) minutes of travel time by each of the three (3) attorneys.

(4) On May 2, 2007, for travel to and from Wilkes-Barre and for assisting Plaintiffs in obtaining their marriage license, Plaintiffs request 7.7 hours for Attorney Grogan.  (Fee Request Chart*, at 4.)  As noted above, Attorney Grogan's travel time to Wilkes-Barre is estimated to be two (2) hours.  This trip thus represents four (4) hours of travel time.

Based on the foregoing, the Court will deduct four (4) hours and eighteen (18) minutes, or 4.3 hours of travel time from each Attorney Roper and Attorney Diver, and will deduct sixteen (16) hours and two (2) minutes, or 16.03 hours of travel time from Attorney Grogan.

### G.     Exercise of Billing Discretion

Defendant submits that all time deducted by Plaintiffs in the "exercise of billing discretion" is not "a gesture of magnanimity," but rather represents time that would not have been recoverable in any case.  Further, Defendant argues that, in the exercise of billing judgment, further reductions should have been made.

(1) First, Defendant challenges 1.6 hours requested for Mr. Diver's time spent preparing for the May 2, 2007 trip to accompany Plaintiffs to the Register of Wills.  (Def.'s Response, Doc. 48 ¶ 77.)  Mr. Diver and Mr. Grogan both accompanied Plaintiffs on that day, but Plaintiffs did not request compensation for Mr. Diver's travel time, only for the 1.6

30

hours of preparation.  Defendant argues that just as it would have been duplicative to request Mr. Diver's travel time on that day, it is duplicative to request compensation for time he spent planning the trip.  (*Id.* ¶ 76 n.4.)  The description of Mr. Diver's time on that day indicates he spent the 1.6 hours "[p]lan[ing] trip to Hazelton for license" and in a t[elephone] c[all] w[ith] Mahoney," who is Defendant Stankovic's attorney.  (Fee Request Chart, at 4.)  No time entries for Attorney Grogan indicate that he duplicated these tasks; Attorney Grogan billed only for the trip itself.  (*See id.*)  As there is no evidence of duplicative work, no reduction will be made.

(2) Second, Defendant argues that one reduction Plaintiffs made was not calculated with sufficient specificity to eliminate all non-recoverable time: One of the tasks for which Plaintiffs are not seeking fees is preparation of a class action complaint, which they had contemplated filing in this case.  Two (2) time entries of Attorney Grogan, 2.6 hours on April 5, 2007 and 4.3 hours on April 9, 2007, reflect time spent "Draft[ing] individual and class complaints."  (*See* Fee Request Chart, at 1.)  As these time entries cover both complaints, Plaintiffs reduced the hours by half.  (*See id.*)  Defendant argues that "it is impossible to determine whether the Plaintiffs' reduction fairly eliminates all of the time spent drafting the Class Action Complaint."  (Def.'s Response, Doc. 48 ¶ 76.)  But Defendant demands more specificity than is required.  A petition need not demonstrate "the exact number of minutes spent nor the precise activity to which each hour was devoted."  *Washington*, 89 F.3d at 1037.  No further reduction is necessary.

(3) Third, in response to Defendant's general objection that Plaintiffs should have delegated more work to junior attorneys, Plaintiffs state that no such attorneys were

available.  (Pls.' Reply Br., Doc. 51, at 12.)  With the exception of some special

consultation work by Attorney Kreimer and the out-of-town ACLU IRCP attorneys, this

case was litigated by the core team of Attorney Roper of the ACLU of Pennsylvania and

Attorneys Grogan and Diver of Langer, Grogan & Diver, P.C.  At the time of this litigation,

"the ACLU had only one staff attorney junior to Ms. Roper, and that attorney practices in

the Pittsburgh office and had a full caseload there."  (*Id.*)  And "Mr. Diver was and

remains the junior member of his firm."  (*Id.*)  In light of this information, no reductions will

be made based on Defendant's general objection to the staffing of this case.


IV.     **Preparation of the Fee Petition**

        Reasonable attorney's fees expended in litigating a fee petition are recoverable.

*See Planned Parenthood of Cent. N.J. v. Attorney Gen. of State of N.J.*, 297 F.3d 253,

268 (3d Cir. 2002); *Pawlak v. Greenawalt*, 713 F.2d 972, 983-84 (3d Cir. 1983).

However, "[t]he Supreme Court has cautioned that fee applications should not devolve

into a second litigation."  *Moore v. Susquehanna Area Reg'l Airport Auth.*, No. 1:02-CV-

0535, 2005 WL 24307090, at *20 (M.D. Pa. Sept. 30, 2005) (citing *Hensley*, 461 U.S. at

437).  Where a court finds that the number of hours charged are excessive, the court

may reduce the number of hours claimed to reflect a reasonable amount of time.  *See*

*Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co.*, 754 F. Supp. 459, 464 (D.V.I. 1991).

The Third Circuit Court of Appeals has indicated that "[t]he fee petition litigation . . . is a

separate entity subject to lodestar and *Hensley* reduction analysis" and that district courts

should "consider whether these services [in litigating fee disputes] require the same

quality of expertise and skill as the underlying dispute." *Windall*, 51 F.3d at 1190 (internal quotation marks omitted).

Plaintiffs' composite time sheet includes 0.25 hours by Attorney Kreimer, 14.9 hours by Attorney Roper, and twenty-seven (27) hours by Attorney Grogan, (a total of 42.15 hours) spent compiling time records, researching, drafting, editing, discussing and preparing supporting declarations for the Fee Petition. (*See* Fee Request Chart.) Defendant objects to this time as excessive and provides "no[n] exclusive" examples of unreasonable entries. (*See* Def.'s Response, Doc. 48 ¶ 71; Pace Decl., Ex. 2 to Doc. 48.) First, Defendant objects that because many of the same attorneys had prepared their fee petition in the separate *Lozano* case, "most of the research regarding the standard for awarding attorneys fees" was already completed and easily accessible to Plaintiffs' attorneys for use in this Fee Petition. (Def.'s Response, Doc. 48 ¶ 71.) Of the hours spent preparing the Fee Petition, however, only 3.2 hours, as listed, were expended on research, specifically "[r]esearch[ing] fee petition case law in 3rd Circuit." (*See* Ex. 1 to Roper Suppl. Decl., at 5.) Even in light of recent similar research having been done by some of Plaintiffs' attorneys, this amount of time is not excessive.

Second, Attorney Grogan spent 17.4 hours "draft[ing] [the] fee petition, and 6.4 hours "[r]evis[ing] [the] fee petition draft." (Fee Request Chart.) And third, Attorney Roper spent 1.6 hours "prepa[ing] [her] CV for defense counsel." (*Id.*) According to Defendant, these entries "illustrate" the unreasonableness of Plaintiffs' time entries, but Defendant has not suggested what a reasonable amount of time for preparation of the Fee Petition would have been. (*See* Pace Decl., Ex. 2 to Doc. 48.)

In *Enright v. Springfield Sch. Dist.*, also a civil rights case, the United States District Court for the Eastern District of Pennsylvania reduced by one-third the 15.9 hours that the plaintiff's attorneys spent preparing the fee petition because "while admittedly lengthy," the petitions were "not so complex or unusual as to justify nearly two full days of attorney time, particularly when one considers that the process of pulling the billing summaries and compiling them could easily be performed by a secretary or paralegal." No. 04-CV-1653, 2008 WL 696845, at *4 (E.D. Pa. Mar. 13, 2008) (Joyner, J.).   Similarly, in *Lewis v. Babbit*, a Title VII case in which the "fee petition relies upon well settled law and the main exhibit, the record of hours spent, has been prepared on an ongoing basis by Lewis' attorney," the court found that twenty (20) attorney hours and nineteen (19) law clerk hours were an excessive amount of time for preparation of the fee petition. *See* No. Civ. A. 97-CV-7576, 1999 WL 551878, at *2 (E.D. Pa. June 11, 1999) (Kelly, J.)  While the court awarded all of the nineteen (19) requested hours of law clerk time, it reduced the attorney's time to the equivalent of two (2) partner hours and eight (8) associate hours.  *Id.*  In a third case, *Brown v. Continental Cas. Co.*, the court held that 24.75 hours preparing the fee petition in an ERISA case was "plainly excessive," as "[a]n attorney litigating an ERISA claim in the number of hours, at the hourly rates, requested here [two hundred twenty-five dollars ($225) per hour], should require only minimal time to research and craft the legal argument necessary to support a request for attorney fees."   No, Civ. A. 99-6124, 2005 1949610, at *4 (E.D. Pa. Aug. 11, 2005) (Pollack, J.).  The court concluded also that the task "requires no legal skill" and while it did not reduce the attorney's hourly rate, it did reduce the time awarded for preparation of the fee petition to

five (5) hours.  *Id.*

In the instant case, it cannot be said that the task of preparing the Fee Petition "requires no legal skill," particularly as the Petition included legal arguments regarding the use of out-of-forum attorneys, and other tasks involved were appropriate for attorneys to perform, such as redacting privileged information from time records requested by defense counsel and discussing reductions with co-counsel.  (*See* Fee Request Chart.)

On the other hand, in light of the cases above, 42.15 hours, particularly when billed at the rate of three hundred fifty dollars ($350) per hour, is an excessive amount of time for preparation of a fee petition.  As such, the Court will reduce by one-third the 14.9 hours expended by Attorney Roper and the twenty-seven (27) hours expended by Attorney Grogan in preparing the Fee Petition, thus subtracting 4.96 hours from Ms. Roper's fee and nine (9) hours from Mr. Grogan's fee.  The total award for all attorneys for preparation of the Fee Petition will be 19.24 hours.

## V.      Calculation of Fees

The lodestar figures for each attorney are as follows:

(1) Attorney Roper requested compensation for 75.6 hours, and the Court will deduct 4.96 hours as excessive time spent on the Fee Petition and 4.3 hours as uncompensable travel time.  Attorney Roper's lodestar, calculated at two hundred ninety dollars ($290) per hour, times 66.34 hours, equals nineteen thousand, two hundred thirty-eight dollars and sixty cents ($19,238.60).  The Court will award this amount for Attorney Roper.

(2) Attorney Grogan requested compensation for 152.05 hours, and the Court will deduct 11.55 hours for preparation of the Complaint, nine (9) hours for preparation of the Fee Petition, and 16.03 hours for uncompensable travel time. Attorney Grogan's lodestar, calculated at two hundred ninety dollars ($290) per hour, times 115.47 hours, equals thirty three thousand, four hundred eighty-six dollars and thirty cents ($33,486.30). The Court will award this amount for Attorney Grogan.

(3) Attorney Diver requested compensation for 128.1 hours, and the Court will deduct 9.1 hours as excessive time spent on general research and 4.3 hours as uncompensable travel time. Attorney Diver's lodestar, calculated at two hundred sixty dollars ($260) per hour times 114.7 hours, equals twenty-nine thousand, eight hundred twenty-two dollars ($29,822). The Court will award this amount for Attorney Diver.

(4) Attorney Jadwat requested compensation for 8.6 hours, and the Court will make no reductions to this time. Attorney Jadwat's lodestar, calculated at one hundred eighty dollars ($180) per hour times 8.6 hours, equals one thousand, five hundred forty-eight dollars ($1548). The Court will award this amount for Attorney Jadwat.

(5) Attorney Chang requested compensation for 4.4 hours, and the Court will make no reductions to this time. Attorney Chang's lodestar, calculated at one hundred sixty dollars ($160) per hour times 4.4 hours, equals seven hundred and four dollars ($704). The Court will award this amount for Attorney Chang.

(6) Attorney Kreimer requested compensation for four (4) hours, and the Court will make no reductions to this time. Attorney Kreimer's lodestar, calculated at three hundred dollars ($300) per hour, times four (4) hours, equals one thousand, two hundred dollars ($1200). The Court will award this amount for Attorney Kreimer.

36

**VI. Costs**

As prevailing parties, Plaintiffs are entitled to costs under Federal Rule of Civil

Procedure 54(d)(1).  Furthermore, the costs that Plaintiffs may recover "are not limited to

the costs taxable under Rule 54(d)(1) and 28 U.S.C. § 1920," because "'prevailing parties

in civil rights cases are generally entitled to recover any reasonable costs associated with

litigating their claims, provided that the costs are necessary and properly documented.'"

*Petrunich v. Sun Bldg. Sys., Inc.*, No. 3:CV-04-2234, 2008 WL 974574, at *8 (M.D. Pa.

Apr. 7, 2008) (quoting *Kratzer v. Wegman's Rest., LLP*, No. Civ. A. 04-5889, 2005 WL

2847320, at *3 (E.D. Pa. Oct. 27, 2005)).

Plaintiffs documented their costs, totaling one thousand, eight hundred fifteen

dollars and fifty-nine cents ($1815.59) in Exhibit C to the declaration of Attorney Grogan

(Client Expense Report, Ex. C to Ex. 3 to Doc. 45.)  These costs claimed consist of

expenditures for delivery services, transcripts, subpoena services, and travel.  The travel

costs, specifically, consist of car rentals, gas at forty-four cents ($0.44) per mile, and

hotel costs for out-of-town attorneys meeting with Plaintiffs and attending court

proceedings.  These costs are recoverable.  *See Bowers v. Foto-Wear, Inc.*, No. 3:CV-

03-1137, 2007 WL 4086339, at *5 (M.D. Pa. Nov. 15, 2007) (approving cost of attorney

travel to depositions and similar events based on simple listing of costs, without requiring

receipts; characterizing such costs as "routinely allowed,"); *Leipziger v. Twp. of Falls*, No.

Civ. A. 00-1147, 2001 WL 1167488, at *1 (E.D. Pa. July 31, 2001) (allowing recovery of

attorney hotel cost in civil rights action); *In re Safety Components, Inc. Sec. Litig.*, 166 F.

Supp. 2d 72, 108 (D.N.J. 2001) (same).  As Defendant has not made specific objections

to any of the costs listed in Plaintiffs' Client Expense Report, they will be allowed, and Plaintiffs will be awarded one thousand, eight hundred fifteen dollars and fifty-nine cents ($1815.59) in costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Petition will be granted as noted in the Order which follows.

August 27, 2008                                            /s/ A. Richard Caputo
Date                                                              A. Richard Caputo
                                                                    United States District Judge

38

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

HEATHER BUCK and JOSE
GUADELUPE ARIA-MARAVILLA

      Plaintiffs,

        v.

DORTHY STANKOVIC, Register of
Wills for Luzerne County, (in her
individual and official capacities),

      Defendant.

CIVIL ACTION No. 3:07-CV-0717

(JUDGE CAPUTO)

## ORDER

Now, this  27th  day of August, 2008, it is **HEREBY ORDERED** that Plaintiffs'

Petition for attorneys' fees and costs is **GRANTED** as follows:

(1)    Plaintiffs are awarded counsel fees as follows:

      (a)    For Mary Catherine Roper, of the ACLU of Pennsylvania: nineteen

            thousand, two hundred thirty-eight dollars and sixty cents

            ($19,238.60).

      (b)    For John Grogan, of Langer, Grogan, and Diver, P.C.: thirty three

            thousand, four hundred eighty-six dollars and thirty cents

            ($33,486.30).

      (c)    For Edward Diver, of Langer, Grogan, and Diver, P.C.: twenty-nine

            thousand, eight hundred twenty-two dollars ($29,822).

(d)     For Omar Jadwat, of the ACLU Foundation Immigrants' Rights Project based in New York: one thousand, five hundred forty-eight dollars ($1548).

(e)     For Jennifer Chang, of the ACLU Foundation Immigrants' Rights Project based in San Francisco: seven hundred and four dollars ($704).

(f)     For Seth Kreimer, of the University of Pennsylvania Law School: one thousand, two hundred dollars ($1200).

(2)     Plaintiffs are awarded costs in the amount of one thousand, eight hundred fifteen dollars and fifty-nine cents ($1815.59).

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge